1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ANGEL BURNETT,                          No.  2:22-cv-0223 DJC KJN P

12              Petitioner,

13       v.                                    FINDINGS & RECOMMENDATIONS

14    JAMES ROBERTSON,

15              Respondent.

16

17    I.  Introduction

18          Petitioner is a state prisoner, proceeding with counsel, with an application for a writ of

19    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2019 conviction for assault

20    to commit sexual penetration during the commission of a burglary, first degree burglary, forcible

21    sexual penetration, and misdemeanor possession of methamphetamine.  Petitioner was sentenced

22    to 25 years to life in state prison.  Petitioner's sole claim is that the trial court's failure to give a

23    voluntary intoxication jury instruction prejudicially violated his rights to due process and a jury

24    trial.  (ECF No. 1.)  After careful review of the record, this Court concludes that the petition

25    should be denied.

26    II.  Procedural History

27          On June 14, 2019, a jury found petitioner guilty of assault to commit sexual penetration

28    during the commission of a burglary (Cal. Pen. Code § 220(b)), first degree burglary (Cal. Pen.

1  Code § 459), forcible sexual penetration (Cal. Pen. Code § 289(a)(1)), and misdemeanor

2  possession of methamphetamine (Cal. Health & Saf. Code § 11377(a)).  (ECF No. 10-1 at 240-

3  44.)  On July 26, 2019, petitioner was sentenced to 25 years to life in state prison for forcible

4  sexual penetration, staying the sentences for assault and first degree burglary.  (Id. at 274-75.)

5      Petitioner appealed the conviction to the California Court of Appeal, Third Appellate

6  District.  The Court of Appeal dismissed the first degree burglary charge, but otherwise affirmed

7  the conviction and sentence.  (ECF No. 10-8.)  Petitioner then filed a petition for review in the

8  California Supreme Court, and the court denied his petition.  (ECF No. 10-9.)

9      Petitioner filed the instant petition on February 2, 2022.  (ECF No. 1.)  Respondent filed

10  an answer, and petitioner filed a traverse.  (ECF Nos. 11 & 12.)

11  III.  Facts[1]

12      After independently reviewing the record, this Court finds the appellate court's summary

13  accurate and adopts it herein.  In its unpublished memorandum and opinion affirming petitioner's

14  judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District

15  provided the following factual summary:

16      The victim, a business traveler, arrived in Sacramento on the evening of
        July 18, 2018. She made her way to an Airstream trailer she had arranged
17      as accommodation for the night. She locked the doors and readied herself
        for bed. She then went to sleep, activating a sleep tracking application on
18      her phone.

19      The victim was awakened sometime later by a man in the trailer. The
        man, later identified as defendant, climbed on top of the victim and held
20      her down. A struggle ensued. The victim screamed, but defendant placed
        his hand over her mouth. He repeatedly referred to the victim as
21      "Ma'am," and urged her to "Listen." He also repeatedly told the victim,
        "I have a weapon." When the victim continued to scream and call for
22      help, defendant said, "Now you're getting loud. Now you got me mad."
        The sounds of the struggle—including defendant's statements—were
23      captured by a recording feature on the victim's sleep tracking application.
        The recording was played for the jury.[1]
24
25      [N.1 It was stipulated that the male voice on the recording was
        defendant's. The victim testified that defendant repeatedly said, "Listen"
26

27  ─────────────────
    [1]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate
28  District in People v. Burnett, No. C090076, 2020 WL 5036284 (Cal. Ct. App. Aug. 26, 2020),
    which respondent lodged as ECF No. 10-8.

and "Let me explain." However, the transcript of the recording indicates that defendant repeatedly said, "Listen," but did not offer to "explain."]

During the struggle, defendant, still on top of the victim, placed his hand inside her pants and digitally penetrated her vagina. Moments later, the victim managed to wriggle out from under defendant. She retrieved her phone and glasses, despite an attempt by defendant to prevent her from doing so. She fumbled with her phone for a moment, and then succeeded in dialing 911. Defendant hesitated, and then fled.

Police officers arrived on the scene. Defendant was long gone, but police found a silver necklace and green lighter in the trailer, neither of which belonged to the victim. Police also found a syringe cap on the ground outside near the trailer door, and a latent fingerprint, later matched to defendant, on the interior side of the frame of the door.

The victim underwent a Sexual Assault Response Team (SART) examination. The examining physician collected swabs from the victim's body and scrapings from her fingernails. DNA analysis showed that the samples contained a mixture of defendant's DNA and the victim's.

Defendant was arrested in downtown Sacramento on July 30, 2018. A search of defendant's backpack revealed burglary tools. Police also found a baggie containing methamphetamine in defendant's sock. A syringe containing liquid methamphetamine was found in the car used to transport defendant to jail.

Defendant was charged by amended complaint with assault with intent to commit forcible sexual penetration during the commission of a burglary in the first degree (Pen. Code, § 220, subd. (b)—count one),[2] first degree burglary (§ 459—count two), forcible sexual penetration (§ 289, subd. (a)(1)—count three), and misdemeanor possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)—count four). With respect to count two, the amended complaint alleged that another person, other than an accomplice, was present in the residence during the commission of the burglary. (§ 667.5, subd. (c)(21).) With respect to count three, the amended complaint alleged that the offense took place during the commission of a burglary within the meaning of sections 667.61, subdivision (d)(4) and 667.61, subdivision (e)(2). Defendant pled not guilty and denied the allegations.

[N.2 Undesignated statutory references are to the Penal Code.]

The matter was tried to a jury in June 2019. The prosecution's witnesses testified substantially as described *ante*. Defendant did not testify or present a case in chief. The jury found defendant guilty on all counts, and found true the allegation that another person, other than an accomplice, was present in the residence during the commission of the burglary charged in count two. The jury also found true the allegation that defendant committed the offense of forcible sexual penetration of the victim during the commission of a residential burglary, with the intent to

3

commit sexual assault upon entry, within the meaning of section 667.61, subdivision (d)(4).

The trial court sentenced defendant to an indeterminate term of 25 years to life on count three, stayed the sentences on counts one and two pursuant to section 654, and deemed him "time[ ]served" on count four.

(ECF No. 10-8 at 2-4.)

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of holdings of the Supreme Court at the time of the last reasoned state court decision.  Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may

4

not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. Further, where courts of appeals have diverged in their treatment of an issue, there is no "clearly established federal law" governing that issue. See Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413; see also Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '""erroneous"""'). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

1   from a federal court, a state prisoner must show that the state court's ruling on the claim being

2   presented in federal court was so lacking in justification that there was an error well understood

3   and comprehended in existing law beyond any possibility for fair-minded disagreement." <u>Id.</u> at

4   103.

5           If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

6   court must conduct a de novo review of a habeas petitioner's claims. <u>Delgadillo v. Woodford,</u>

7   527 F.3d 919, 925 (9th Cir. 2008); <u>see also</u> <u>Frantz v. Hazey</u>, 533 F.3d 724, 735 (9th Cir. 2008)

8   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

9   § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

10  considering de novo the constitutional issues raised.").

11          The court looks to the last reasoned state court decision as the basis for the state court

12  judgment. <u>Stanley</u>, 633 F.3d at 859; <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004).

13  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

14  previous state court decision, this court may consider both decisions to ascertain the reasoning of

15  the last decision. <u>Edwards v. Lamarque</u>, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a

16  federal claim has been presented to a state court and the state court has denied relief, it may be

17  presumed that the state court adjudicated the claim on the merits in the absence of any indication

18  or state-law procedural principles to the contrary." <u>Richter</u>, 562 U.S. at 99. This presumption

19  may be overcome by a showing "there is reason to think some other explanation for the state

20  court's decision is more likely." <u>Id.</u> at 99-100. Similarly, when a state court decision on

21  petitioner's claims rejects some claims but does not expressly address a federal claim, a federal

22  habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the

23  merits. <u>Johnson v. Williams</u>, 568 U.S. 289, 298-301 (2013) (citing <u>Richter</u>, 562 U.S. at 98). If a

24  state court fails to adjudicate a component of the petitioner's federal claim, the component is

25  reviewed de novo in federal court. <u>See, e.g.</u>, <u>Wiggins v. Smith</u>, 539 U.S. 510, 534 (2003).

26          Where the state court reaches a decision on the merits but provides no reasoning to

27  support its conclusion, a federal habeas court independently reviews the record to determine

28  whether habeas corpus relief is available under § 2254(d). <u>Stanley</u>, 633 F.3d at 860; <u>Himes v.</u>

Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court reviews the state court record to "determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  Richter, 562 U.S. at 101.  It remains the petitioner's burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'"  Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860 (citing Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

V.  Petitioner's Claim

Petitioner raises only one ground for habeas relief—that the state court unreasonably decided that the trial court did not err when it denied petitioner's request for a voluntary intoxication jury instruction.  (ECF No. 1 at 13-17.)  In response, respondent argues that this claim does not merit habeas relief.  (ECF No. 11.)

The state court evaluated petitioner's claim and rejected it on the merits.

> After the close of evidence, defense counsel asked the trial court to reconsider its denial of a prior off-the-record request for an instruction on voluntary intoxication. The trial court denied the request a second time, pointing to the absence of evidence that defendant was under the influence at the time of the assault. Defendant argues there was substantial evidence supporting an intoxication instruction. We disagree.

7

A defendant is entitled to a jury instruction on voluntary intoxication only when there is substantial evidence that the defendant was voluntarily intoxicated *and* that the intoxication affected the defendant's actual formation of specific intent. (*People v. Williams* (1997) 16 Cal.4th 635, 677 [witness testimony that defendant was " 'probably spaced out' " provided "scant" evidence of intoxication].) An intoxication instruction is not required when the evidence shows a defendant ingested drugs or alcohol, unless the evidence also shows he became intoxicated to the point where he failed to form the requisite intent or attain the requisite mental state. (*People v. Ivans* (1992) 2 Cal.App.4th 1654, 1661.)

Defendant argues substantial evidence for an intoxication instruction could be found in the syringe cap recovered from the area outside the trailer door, his "bizarre behavior" during the assault, and the discovery of methamphetamine on his person and in the patrol car used to transport him to jail 11 days later. But these bits and pieces of evidence only raise an inference that defendant may have been a drug user. They do not amount to substantial evidence that defendant was intoxicated at the time of the assault, let alone that he was so intoxicated he could not form the requisite intent.

As the People observe, there was no evidence that the syringe cap found near the door belonged to defendant. And even assuming defendant used methamphetamine before entering the trailer, leaving the syringe cap outside the door, there was no evidence of the effect of any such drug use on defendant's state of mind. Defendant makes much of his purportedly "crazy" statements to the victim, but calling an unfamiliar woman "Ma'am," and urging her to "Listen," amidst other threats and entreaties to be quiet, do not constitute behavior so unusual as to provide a basis for inferring that defendant was intoxicated at all, much less that his intoxication interfered with his ability to form the requisite intent. Likewise, the presence of methamphetamine in defendant's sock and in the patrol car, when he was arrested days later, may provide a reasonable basis for inferring that defendant was a drug user, but they provide only a speculative basis for inferring that defendant used drugs on the night of the assault, and no basis at all for inferring that he was intoxicated to the point that he could not form the requisite intent. Speculative evidence of voluntary intoxication does not constitute substantial evidence warranting an intoxication instruction. (*People v. Lewis* (2001) 26 Cal.4th 334, 369 [speculative evidence is not substantial evidence].)

Defendant directs our attention to the trial court's admission of evidence of the burglary tools over his objection. He notes that the trial court permitted the jury to draw an inference about his intent to enter the trailer on the night of the assault from the fact that he possessed burglary tools some 11 days later. He suggests that the same reasoning should have compelled the trial court to instruct the jury on voluntary intoxication. Specifically, he argues that the jury should have been allowed to infer, from the fact that he possessed methamphetamine at the time of his arrest, that he used methamphetamine on the night of the assault. But, again, defendant's argument fails for lack of substantial evidence that any such methamphetamine use had any effect on his ability to form the

1
2
3
4
5
6

required intent. (See *People v. Roldan* (2005) 35 Cal.4th 646, 716 [evidence that defendant was a habitual user of marijuana did not constitute substantial evidence he was intoxicated or under the influence at the time of the crime], overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421 & fn. 22.) Defendant's statements to the victim do not constitute substantial evidence that he used methamphetamine at all on the night of the assault, let alone that he was rendered incapable of forming the requisite intent. The trial court properly refused to instruct on voluntary intoxication.

7    (ECF No. 10-8 at 4-6.)

8         To the extent petitioner claims that the state court incorrectly interpreted state law in

9    denying his request for a voluntary intoxication jury instruction, this claim is not cognizable on

10   habeas review.  Federal habeas corpus relief is only available for violations of federal law.  See

11   Wilson, 562 U.S. at 5; Estelle, 502 U.S. at 71-72.  This Court must defer to the state court's

12   finding that there was no error under state law.  Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per

13   curiam); Estelle, 502 U.S. at 71-72.

14        On the merits, federal habeas relief is only available if "'the ailing instruction by itself so

15   infected the entire trial that the resulting conviction violates due process.'"  Estelle, 502 U.S. at

16   72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  The jury instruction "'may not be

17   judged in artificial isolation,' but must be considered in the context of instructions as a whole and

18   the trial record."  Id.  The constitutional significance of an omitted instruction must be evaluated

19   "by comparison with the instructions that were given," and an omitted or incomplete instruction

20   "is less likely to be prejudicial than a misstatement of the law."  Henderson v. Kibbe, 431 U.S.

21   145, 155-56 (1977).

22        Petitioner contends that the trial court violated his right to due process and a fair trial by

23   failing to instruct the jury on voluntary intoxication defense.  "As a general proposition a

24   defendant is entitled to an instruction as to any recognized defense for which there exists evidence

25   sufficient for a reasonable jury to find in his favor."  Mathews v. United States, 485 U.S. 58, 63

26   (1988); Larsen v. Paramo, 700 F. App'x 594, 596 (9th Cir. 2017) (noting that the Supreme Court

27   in Mathew merely recites a general proposition of federal criminal procedure; "it did not

28   recognize a constitutional right to a jury instruction.")  The failure to instruct on a defense theory

1   implicates due process only "if the theory is legally sound and evidence in the case makes it

2   applicable."  Clark v. Brown, 450 F.3d 898, 904-05 (9th Cir. 2006) (citation omitted); see Hicks

3   v. Carey, 220 F. App'x 467, 468 (9th Cir. 2007) ("No federal authority requires a state trial court

4   to instruct in a criminal case on a defense not supported by the evidence.")

5          The state court concluded that the evidence of the syringe cap outside the trailer door, his

6   "bizarre behavior" during the assault, and recovered methamphetamine on his person 11 days

7   after the incident "do[es] not amount to substantial evidence that defendant was intoxicated at the

8   time of the assault, let alone that he was so intoxicated that he could not form the requisite

9   intent." (ECF No. 10-8 at 5.)  Based on an independent review of the record, this Court

10  determines that the state court's conclusion was not objectively unreasonable.  (ECF No. 10-2 at

11  271-73); see, e.g., Murray v. Schriro, 882 F.3d 778, 811-12 (9th Cir. 2018).  As the state court

12  noted, there is no evidence that the syringe cap belonged to petitioner, or that he used

13  methamphetamine before the assault or that drugs impacted his state of mind.  (ECF No. 10-8 at

14  5.)  Second, the fact that petitioner called the victim "Ma'am" and asked her to "listen" during the

15  attack does not support an inference of intoxication or that any intoxication prevented him from

16  having the requisite intent.  (Id.)  Lastly, although the presence of drugs on his person during his

17  arrest days after the attack suggest he is a drug user, the state court reasonably determined that

18  this fact provides "only a speculative basis for inferring that defendant used drugs on the night of

19  the assault, and no basis at all for inferring that he was intoxicated to the point that he could not

20  form the requisite intent." (Id. at 5-6.)

21         Petitioner cites Bradley v. Duncan, 315 F.3d 1091 (9th Cir. 2002), for the proposition that

22  a failure to instruct on a defense violates petitioner's due process right.  But this case is

23  inapposite.  The Ninth Circuit has advised that cases involving a trial court's refusal to give an

24  instruction on the affirmative defense of entrapment, like in Bradley, is distinguishable from cases

25  like this one involving a failure to give an instruction that directs the jury to consider particular

26  evidence under an element of an offense.  See, e.g., Larsen, 700 F. App'x at 596 (noting that

27  petitioner "was given a meaningful opportunity to present a complete defense because the jury

28  heard and was properly instructed to consider evidence bearing on his specific intent, including

testimony on his diagnosed Asperger's Syndrome"); Duckett v. Godinez, 67 F.3d 734, 743 (9th Cir. 1995).  As petitioner cites in his brief, evidence of voluntary intoxication can only negate whether defendant had the specific intent to commit the charged crimes.  (ECF No. 1 (citing Cal. Penal Code § 2934(a)).  Here, the trial court instructed the jury that it must consider all evidence in deciding whether the state has proved its case beyond a reasonable doubt.  (ECF No. 10-1 at 169; see also id. at 195-98 (instructing on elements of each crime, including specific intent).)  Jurors are presumed to follow the jury instructions.  Weeks v. Angelone, 528 U.S. 225, 234 (2000).  Petitioner has not provided any evidence to rebut that presumption.  As a result, this Court concludes that the state court's rejection of petitioner's jury instructional error claim was not contrary to, or an unreasonable application of, clearly established federal law, or that such a finding was based on an unreasonable application of the facts.  Habeas relief is not warranted for this claim.

## VI.  Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why, and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

////

////

////

////

service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 30, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/burn0223.157